**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

In re KMART CORPORATION et al.,    )
                                   )
                                   )    No. 08 C 2101
                                   )
        Debtors.                   )

## MEMORANDUM OPINION

This case is before us on appeal from the bankruptcy court's order of February 25, 2008, denying the motion of Tabatha Peterson for a declaration that her tort claims against Kmart were not barred. For the reasons explained below, the order of the bankruptcy court is affirmed.

## BACKGROUND

On January 22, 2002, Kmart and its affiliated debtors filed voluntary petitions for reorganization pursuant to Chapter 11 of the United States Bankruptcy Code. According to appellant Peterson, about four months later, on May 23, 2002, several store managers of a Kmart store in Richfield, Utah held a party at the store at which they conducted themselves in a "vulgar, offensive, and tortious manner," giving rise to a subsequent action by Peterson for intentional infliction of emotional distress ("IIED") and defamation. (Appellant's Br. at 2.)

On April 23, 2003, the bankruptcy court entered an order (the

"Confirmation Order") confirming Kmart's first amended joint plan of reorganization (the "Plan").  The Plan became effective on May 6, 2003, and June 20, 2003 was set as the bar date for administrative claims.  The court-approved noticing agent caused a notice of the administrative claims bar date to be served and published in national newspapers.

On May 27, 2003, Peterson filed her complaint against Kmart and others in Utah state court seeking damages for IIED and defamation arising from the May 23, 2002 incident.  In November 2004, Kmart filed a motion to dismiss the case for lack of subject-matter jurisdiction, arguing that Peterson's claims were barred because they had been discharged in Kmart's bankruptcy.  On July 5, 2005, the Utah court stayed Peterson's suit pending a ruling from the bankruptcy court on the issue of discharge.

In early December 2007, Peterson filed a motion with the bankruptcy court seeking a declaration that her claims against Kmart constitute an administrative expense claim that, under the terms of Kmart's Plan, was not discharged. After briefing and oral argument, Bankruptcy Judge Sonderby denied Peterson's motion. (R. 5, Tr. of Oral Ruling, Feb. 25, 2008; R.6, Order of Feb. 25, 2008). Judge Sonderby held that although Peterson's claim was entitled to administrative expense priority, it was subject to the administrative claims bar date pursuant to the terms of the Plan.

Peterson now appeals from the bankruptcy court's ruling.

**DISCUSSION**

This court sits as an appellate court for bankruptcy court proceedings. We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. See In re Smith, 286 F.3d 461, 464-65 (7th Cir. 2002). Mixed questions of law and fact are reviewed de novo. Freeland v. Enodis Corp., 540 F.3d 721, 729 (7th Cir. 2008). "A bankruptcy court's interpretation of a plan it confirmed is subject to full deference as an interpretation of its own order and may be overturned only if the record shows an abuse of discretion in the interpretation." Airadigm Commc'ns, Inc. v. FCC (In re Airadigm Commc'ns, Inc.), --- F.3d ----, 2008 WL 4724375, at *5 (7th Cir. Oct. 29, 2008).

The issue for review is whether Peterson's state-court claims were subject to the June 20, 2003 administrative claims bar date included in Kmart's Plan. (If the claims were subject to the bar date, they are consequently barred because Peterson did not file a claim with the bankruptcy court by that date.)[1] Judge Sonderby held that Peterson's claim was entitled to administrative expense priority under the "Reading exception" to the usual requirements for administrative priority (for instance, that the expense benefit

---

[1] Peterson did not seek to file a late proof of claim or argue excusable neglect.

the estate).[2] But the court found that Peterson's "argument for, in effect, an exemption from the bar date" was "flawed." (R. 5, Tr. at 13.)

Peterson asserts that pursuant to the terms of Kmart's Confirmation Order and Plan, she was not required to file a request for payment because her claim was incurred in the ordinary course of business and thus not subject to the bar date. She points to the following provisions of the Plan and Confirmation Order:

> Subject to the provisions of Article X of this Plan, . . . an Allowed Administrative Claimholder in the Chapter 11 Cases shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim . . . ; provided, however, that . . . (z) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto.

(R. 1, Plan, Art. II, § 2.1.)

> All other requests for payment of an Administrative Claim . . . must be filed, in substantially the form of the Administrative Claim Request Form attached . . . no later than [the bar date]. Any request for payment of an Administrative Claim . . . that is not timely filed and served shall be disallowed automatically . . . . Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an

---

[2]/ The exception is based on Reading Co. v. Brown, 391 U.S. 471 (1968), from which arose the general rule that post-petition tort liabilities of a business operating in bankruptcy qualify for administrative expense priority as "actual and necessary" expenses for the preservation of the estate. The Supreme Court explained its decision as follows: "[I]n considering whether those injured by the operation of the business during an arrangement should share equally with, or recover ahead of, those for whose benefit the business is carried on, the latter seems more natural and just." Id. at 482.

> Administrative Claim arising in the ordinary course of business as a result of retail merchandise or services provided by trade vendors or service providers which is paid or payable by the Debtors in the ordinary course of business.

(R. 1, Confirmation Order, ¶ 54 (amending § 10.4 of the Plan).)

> All other requests for payment of an Administrative Claim . . . must be filed, in substantially the form of the Administrative Claim Request Form attached . . . no later than [the bar date]. Any such request for payment of an Administrative Claim that is not timely filed and served shall be disallowed automatically . . . . Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim which is paid or payable by the Reorganized Debtors or the Debtors in the ordinary course of business.

(R. 1, Confirmation Order, ¶ 25.)

Paragraph 54 of the Confirmation Order amended § 10.4 of the Plan and provided that the only administrative claims that would be exempt from the claims filing requirement and thus exempt from the bar date were claims held by retail vendors or service providers. But Peterson relies upon paragraph 25 of the Confirmation Order, which does not contain the same limiting language as paragraph 54 and simply refers to claims that are payable in the ordinary course of business. Peterson contends that her tort claims were incurred by Kmart "in the ordinary course of business" and thus were not subject to the claims filing requirement or bar date.

Bankruptcy Judge Sonderby rejected Peterson's argument. She first observed that Peterson focuses on paragraph 25 but ignores paragraph 54. Judge Sonderby gave effect to the more specific

limiting language of paragraph 54 referring to vendors and service providers, invoking the principles that reorganization plans are analogous to contracts and that contracts should be analyzed as a whole to give effect to all parts and language according to their natural meaning.  Judge Sonderby concluded that the failure to amend the language of paragraph 25 to add the qualification contained in paragraph 54 appeared to have been inadvertent but was ultimately inconsequential because the unamended language--"paid or payable by the [Debtors] in the ordinary course of business"--is most reasonably understood to refer to ordinary commercial claims.  The bankruptcy court reasoned:

> While a post-petition personal injury claim may be a cost "ordinarily incident in the operation of a business" within the purview of Reading and its progeny, the customary and natural meaning of the phrase "payable in the ordinary course of business" as used in Kmart's plan and in the confirmation order refers to ordinary commercial claims such as those held by retail merchants. This is particularly true in light of the language used in paragraph 2.1 of the plan, stating that claims incurred in the ordinary course of business would be paid in the ordinary course "in accordance with the terms of any agreements relating thereto."

(R. 5, Tr. at 18.)

We agree with Judge Sonderby's determination that pursuant to the terms of the Plan and Confirmation Order, Peterson was required to file an administrative claim request form before the bar date.  Peterson would have us entirely disregard paragraph 54's qualification "as a result of retail merchandise or services

provided by trade vendors or service providers," but the more reasonable reading of the Plan and Confirmation Order would be to give it effect and to interpret it as qualifying the "ordinary course of business" claims referred to paragraph 25 as well. Judge Sonderby correctly observed that contracts must be read as a whole to give meaning as to all of their provisions. See, e.g., Barnett v. Ameren Corp., 436 F.3d 830, 833 (7th Cir. 2006) ("Contractual provisions must be read in a manner that makes them consistent with each other.")

We also agree with the bankruptcy court's determination that Peterson's claims did not arise in the "ordinary course of business" in any event. The documents do not define that phrase, but we agree with Judge Sonderby that the phrase "claim[s] . . . payable . . . in the ordinary course of business" is most reasonably understood to refer to commercial claims governed by agreements. Moreover, Peterson cites no authority that supports her argument that tort claims arise in the ordinary course of business. Reading stands for the proposition that her claim receives administrative expense priority, but it does not support her argument that the claim arises in the ordinary course of business pursuant to the terms of the Plan and Confirmation Order. In addition, Peterson's reliance on paragraph 51 of the Confirmation Order to bolster her argument is rejected; that paragraph is not relevant to the issue of whether her

administrative expense claims were subject to the bar date.

Judge Sonderby was uniquely situated to interpret the confirmed Plan, see In re Airadigm, 2008 WL 4724375 at *7, and she did not abuse her discretion in her interpretation. Peterson's claims were subject to the bar date, and she did not file an administrative claim request form before that date. Accordingly, the Bankruptcy Court properly denied Peterson's motion for a declaration that the tort claims were not discharged under the terms of Kmart's Plan.

## **CONCLUSION**

For the foregoing reasons, the bankruptcy court's order of February 25, 2008, in which the court denied the motion of Tabatha Peterson for a declaration that her tort claim against Kmart was not barred, is affirmed.

DATE:   November 20, 2008

ENTER:   _____
John F. Grady, United States District Judge